FILED IN CHAMBERS
U.S.D.C ATLANTA

Date: May 14 2024

KEVIN P. WEIMER, Clerk

By: s/ Theresa Bass
Deputy Clerk

# United States District Court

NORTHERN DISTRICT OF GEORGIA

UNITED STATES OF AMERICA

v.

OTIS STORY

**CRIMINAL COMPLAINT**

Case Number: 1:24-mj-0433

I, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about May 13, 2024 in Fulton County, in the Northern District of Georgia, defendant did, knowingly and intentionally possess with intent to distribute at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a) and (b)(1)(A).

I further state that I am a Drug Enforcement Administration Task Force Officer and that this complaint is based on the following facts:

PLEASE SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof.   Yes

Signature of Complainant
Justin E. Clutter

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to me by telephone pursuant to Federal Rule of Criminal Procedure 4.1.

| May 14, 2024 | at | Atlanta, Georgia |
|---|---|---|
| Date | | City and State |

J. ELIZABETH MCBATH
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer

Signature of Judicial Officer

AUSA Matthew R. LaGrone / matthew.lagrone@usdoj.gov

ATTEST: A TRUE COPY
CERTIFIED THIS

Date: May 14 2024

KEVIN P. WEIMER, Clerk

By: s/ Theresa Bass
Deputy Clerk

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, DEA Special Agent Justin Clutter, depose and say under penalty of perjury:

### Purpose of Affidavit

1. This affidavit is made in support of a criminal complaint charging **Otis STORY** with violation of Title 21 U.S.C. § 841 (possession with intent to distribute a controlled substance) on or about May 13, 2024.

2. Based on the following facts, I submit that there is probable cause to believe that on or about May 13, 2024, in Fulton County, in the Northern District of Georgia, STORY did possess with the intent to distribute a controlled substance, namely at least 500 grams of a mixture and substance containing a detectible amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

3. This affidavit is intended to establish probable cause for the criminal complaint authorizing the arrest of STORY and does not purport to set forth all of my knowledge of, or investigation into, this matter. The information set forth in this affidavit is based upon my experience, training, personal knowledge, observations, and consultations with other law enforcement investigators and agents, and other sources of information related to this investigation.

### Affiant Background

4. I am an "investigative or law enforcement officer" of the United States, within the meaning of Title 18, United States Code, Section 2510(7). That is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

5. I am a DEA Special Agent currently assigned to the Atlanta Field Division, High Intensity Drug Trafficking Area (HIDTA) Task Force Group 2. As a Special Agent with DEA, my investigations focus on large-scale narcotic

offenders. I have been a Special Agent with DEA since January 29, 2020. I have received approximately 18 weeks of specialized training at the DEA Academy in Quantico, Virginia. This training included several hundred hours of comprehensive, formalized instruction in topics including, but not limited to, basic narcotic investigations, drug identification, detection, interdiction, familiarization with United States narcotic laws, financial investigations and money laundering, identification and seizure of drug related assets, undercover operations, and electronic and physical surveillance procedures. Prior to my employment with the DEA as a Special Agent, I was a Police Officer for approximately 10 years. I was assigned to the DEA as a Task Force Officer while employed by the Sandy Springs Police Department from April 2017 to September 2019. Prior to being assigned to the DEA as a Task Force Officer, I was assigned to the Sandy Springs Police Department (SSPD), Special Investigations Unit (SIU), as an investigator. The primary focus of the SSPD SIU is narcotics investigations. I was assigned to the SSPD SIU from December 2014 to September 2019. I was employed by the Sandy Springs Police Department from June 2013 to September 2019. Prior to my employment with the Sandy Springs Police Department, I was employed by the Atlanta Police Department as a Police Officer from October 2009 to June 2013. During the majority of my employment with Atlanta Police Department and Sandy Springs Police Department I focused on narcotics investigations.

6. During the course of my law enforcement career I have spoken to, and worked with, more experienced federal, state, and municipal narcotic agents and officers. I have participated in numerous investigations of illicit drug trafficking organizations involving the use of confidential informants, electronic and physical surveillance, the analysis of telephone toll records, investigative interviews, and the service of search and arrest warrants. These investigations

include the unlawful importation, possession with intent to distribute, and distribution of controlled substances, as well as the related laundering of monetary instruments, the conducting of monetary transactions involving the proceeds of specified unlawful activities, and conspiracies associated with criminal narcotic offenses, in violation of Title 21, United States Code, Sections 841 and 846.

7. During my law enforcement career, I have been the affiant or assisted in writing and/or executing in excess of 100 search and arrest warrants pertaining to the seizure of all types of criminal evidence including but not limited to illegal drugs, drug paraphernalia, drug records, drug proceeds, and evidence of other types of crimes.

8. I have been involved in the execution of numerous state and federal search warrants related to drug trafficking investigations. As a result, I have encountered and become familiar with the various tools, methods, trends, paraphernalia, and related articles utilized by traffickers and trafficking organizations in their efforts to import, conceal, manufacture, and distribute controlled substances.

9. Furthermore, I have interviewed drug dealers, users, and confidential informants and have discussed with them the lifestyles, appearances, and habits of drug dealers and users. I have become familiar with the manner in which narcotics traffickers smuggle, transport, store, and distribute narcotics, as well as how they collect and launder drug proceeds. I am also familiar with the manner in which narcotics traffickers use telephones, cellular telephone technology, coded communications or slang-filled conversation, false or fictitious identities, and other means to facilitate their illegal activities and thwart law enforcement investigations.

10. My awareness of these drug trafficking practices, as well as my knowledge of drug use and distribution techniques as set forth in this Affidavit, arise from the following: (a) my own involvement in drug investigations and searches during my career as a law enforcement officers, as previously described; (b) my involvement in what other agents and police officers have advised me when relating the substance of their similar debriefings and the results of their own drug investigations; and (c) other intelligence information provided through law enforcement channels.

## Sources of Information

11. The following information has been derived from my personal participation in the investigation, examination of reports, surveillance operations, and various other sources of information. Some of the information contained in this affidavit was made known to me by other law enforcement agents who also participated in the investigation of this case. When this affidavit states an opinion or belief, the opinions and beliefs are based upon my familiarity with this information, as well as my experiences in other drug trafficking cases and training I have received.

12. I have not included in this affidavit every fact known to me relating to this investigation. Instead, I have included only those facts necessary to establish probable cause for a Criminal Complaint against Otis STORY for a violation of the federal narcotics laws, namely Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

## Probable Cause Basis

13. In March 2024, DEA Atlanta HIDTA Group 2 ("HIDTA 2") began investigating a source of supply of methamphetamine believed to be operating within the Northern District of Georgia. HIDTA 2 was made aware of this source

of supply by a DEA Confidential Source (CS).[1] The CS knew the source by the nickname/street name "UNeek." HIDTA 2 now knows the individual the CS referred to as "UNeek" is Otis STORY.

14. On May 2, 2024, the CS communicated with STORY, at the direction of agents from HIDTA 2, to coordinate the purchase of one kilogram of methamphetamine from STORY. Agents conducted surveillance in the area around 1 Buckhead Loop in Atlanta.

15. At approximately 3:27pm, agents observed a black BMW X7 bearing Florida tag AZ35EY, park next to the CS's vehicle. The CS exited their vehicle and entered the BMW X7, which was driven by STORY. The CS and STORY counted the OAF and STORY told the CS that he would be back with the methamphetamine. After counting the money, STORY instructed the CS to meet STORY in the park nearby, Tower Place Park, to obtain the methamphetamine.

16. Agents then observed STORY meet with the CS in the park at approximately 4 pm, when STORY provided the CS with a vacuum-sealed bag containing approximately one kilogram of a crystal-like substance that later field tested positive as methamphetamine.

17. Agents observed STORY enter a condominium tower near 3324 Peachtree Road. Agents then identified STORY's car, which they had previously observed, in the parking deck. They subsequently identified STORY's apartment as unit 1816.

18. On May 13, 2024, at the direction of agents, the CS contacted STORY and arranged to purchase 2 kilograms of methamphetamine from STORY. The

---

[1] The CS is cooperating with law enforcement in exchange for consideration in a pending criminal case. The CS has been cooperating with law enforcement officials since March 2024. The information the CS has provided has been corroborated and verified, and I believe the information the CS provided is reliable and credible.

CS told agents that STORY was willing to sell them two kilograms and instructed the CS to meet them at the same park from the deal on May 2, 2024.

19. Agents established surveillance in the area and were equipped with ballistic vests which had "POLICE" clearly marked. At approximately 12:22pm, at the direction of agents, the CS told STORY that they were in the area for the deal. STORY told the CS that STORY would be there shortly.

20. At approximately 12:30pm, agents from HIDTA 2 observed STORY enter the elevator wearing a black backpack and white shirt. Agents observed STORY take the elevator to the ground level, where he exited and began walking on foot toward the deal location.

21. HIDTA 2 agents then approached STORY in a vehicle. STORY responded by fleeing on foot from agents. Agents pursued STORY on foot and identified themselves as law enforcement but STORY continued to flee. Agents were ultimately able to restrain and handcuff STORY.

22. STORY told agents that he wanted to cooperate. STORY's backpack was found to contain 2 plastic resealable bags containing approximately 2.2 kilograms of a crystal-like substance that later field tested as methamphetamine.

23. At approximately 12:52pm, HIDTA 2 agents read STORY his *Miranda* rights. STORY advised he understood and wished to speak with agents. STORY admitted to agents that he was intending to sell methamphetamine.

24. Agents asked STORY if he had any drugs or weapons in his vehicle or residence. STORY told agents that there was nothing in his car, but there was a kilogram of methamphetamine and three firearms in his residence. Agents were aware that STORY was a convicted felon prohibited from owning a firearm.

25. STORY signed a consent to search form for his vehicle and residence. Agents did not locate anything of evidentiary value in STORY's vehicle.

26. STORY walked with agents to his residence, and entered the code to the front door to allow agents to access his residence. Inside a kitchen cabinet, agents located approximately 1.3 kilograms of a substance that field tested positive as methamphetamine, approximately 11.3 grams of suspected psilocybin mushrooms, plastic bags, a scale, and bundled US currency that STORY claimed would be about $7,000. In a kitchen drawer, SA Clutter located a loaded Glock handgun, near the cabinet that contained the aforementioned mushrooms and methamphetamine. STORY also told agents that there was a device in the drawer that would convert his rifle to shoot fully automatic.

27. In STORY's bedroom, agents located a black DeWalt storage box. Inside the box, agents located an AR-15 style rifle and a Glock handgun with a full auto switch attached to the rear of the slide. Agents asked STORY about this device and said it would allow the gun to shoot fully automatic. The storage box also had numerous loaded magazines for the rifle and extended magazines for the pistol which were loaded. There was also an additional short barreled rifle upper receiver in the box. Also located in the box was approximately 478.5 grams of suspected marijuana.

**END OF AFFIDAVIT**